Jr., oral arguments not to exceed 15 minutes per side. Mr. Michael Holley for the appellant. Good afternoon. I'm Michael Holley and I represent David Church in this appeal. I would like to ask for three minutes for rebuttal. Very well. Thank you. Now in this case we challenge both the search warrant and its execution. The first issue turns on what the police officer wrote in the police, in the search warrant application. That's the only thing it turns on. And in that application, he basically said that he came across, when arresting Mr. Church, he found out he had been smoking marijuana in his house. And that's a fine start for the warrant, but the officer made two major mistakes that made this warrant patently insufficient. One mistake is even though this court has said that at least some temporal reference is necessary to ascertain the existence of probable cause, he didn't give that reference. He did not say when it was that he had come across Mr. Church having smoked marijuana in his house. And second of all, he used a form that's used to search households that are thought to have ongoing drug dealing operations. And therefore he sought a warrant that allowed him to search basically everything in Mr. Church's house for serious felony offenses, drug trafficking, money laundering, and racketeering, even though probable cause for those offenses was lacking. Either one of these flaws is enough to find probable cause lacking. Either one of these is enough to overcome the Leon Goodfaith hurdle because the application was so deficient. Now, you suggest this meets the standard of bare bones affidavit, one that is kind of a fill in the blanks, entirely boilerplate, based upon conclusory statements of the affidavit. This isn't one of those, is it? Your Honor, it's an application that, it's a warrant that no reasonable officer would rely on. Why? Because of these two flaws. One is... Because it's got a lot of boilerplate stuff about Rico in it? No, well, partly, Your Honor. I mean, there's two parts of it. One is because it didn't say when this happened. A reasonable officer would review this and would see that, if he were to review it, would see that it's predicated upon precipient information, things that the affiant actually saw, or claims at least, to have actually seen himself and to have actually participated, to have actually perceived. Distinct, by the way, from the situation in Hudson, where inferences, it seems to me, were built upon inferences. But to this warrant affidavit, the officer reported in the form of an affidavit what he had experienced, which was cast in terms of ongoing marijuana possession. And, of course, you have to possess in order to use. So, ongoing marijuana possession of a fairly... Well, it's cast as insignificant, I think, in your briefing, but not so, according to my information. Marijuana blunts, hollowed out cigars, packed with several loads of marijuana. I think he said he found... He showed them one blunt. Well, marijuana... I'm speaking generically. Marijuana blunts are not single joints. They're cigars that contain ordinarily multiple dosage units of marijuana. So it's... But I would suggest that that may indicate, with reasonable inference, a pretty significant marijuana usage on an ongoing basis. The girlfriend and Church both said that he smokes, in the present tense, he smokes marijuana in the house. She said, I tried to get him to stop, but he keeps smoking in the house. He smokes... That implies, pretty clearly, a continuing course of conduct, doesn't it? Your Honor, what the warrant reports the girlfriend saying is, yeah, I've told him to stop. It doesn't say how long ago this happened. It doesn't say how many times she's told him to stop. It doesn't say... Has she stated that Church does smoke marijuana in the residence? Yes, sir. And that she has... ...ongoing marijuana smoking? Your Honor, that's what she said at the time that the officer spoke to her. And yes, it is his own facts that he witnessed himself, but he doesn't say when he witnessed them. In Hython, the officers witnessed the controlled by. They didn't say when that happened. And in Hython, the warrant concludes with similar language. It says, due to the above transaction with the residence, officers believe there to be further crack cocaine within the residence. So the omission of a date would be grounds to suppress here? It would, Your Honor, because... Reading this? I mean, this sure doesn't sound stale. I mean, this reads like, you know, the guy, this just happened. It reads like it just happened if you assume it just happened. And really what the government is asking the court to do is to make that assumption, which is the precise assumption that the court in Hython... Even under Leon, it's no good. I mean, an officer who's reading this would have to, I guess, always check and make sure there's some date reference somewhere in here. Yes, Your Honor. Or else it's per se unreasonable under Leon. Yes, Your Honor. And it is standard boilerplate for the officers to say, within the past 72 hours, we did this and that. That's how they normally start off a discussion of a drug bond. This affidavit, I know you believe that the warrant references the wrong section number under state law, that it references distribution rather than possession. But, I mean, this affidavit does, apart from the date issue, lay out probable cause to believe a crime, there is evidence of a crime, namely possession at least, in the residence, right? Yes, Your Honor. That's true. That's true. As it was in Hudson that the... I'm sorry, the crime, but not the crime for which they sought evidence of. Now, Hudson basically indicates that if the design is fundamentally flawed like that, then the warrant is invalid. The district court tried to sever out part of this warrant by saying, well, sure the money laundering is no good, the racketeering is no good, but I'm going to read this statute as covering drug possession. Now, I think that was a legitimate move. Do you think there's as much of a division between possession and possession with intent as there is between sexual molestation and possession of pornographic images? Your Honor, there's obviously some overlap in that there's drugs present. Yeah, it's a violation of the Tennessee controlled, or Tennessee drug law, whatever the phrase is, controlled substance law. Sure. Generically. Possession, possession with intent. Sure. Manufacturing. Sure. This form... And vetting and so on and so forth. It's all under the same umbrella of drug control laws, right? Yes, Your Honor. The same can be said, you argue about the Hudson situation where we have sexual misconduct on the one hand and physical or electronic images on the other hand. In Hudson, the defendant was using his computer to try and lure a boy to a meeting. Certainly the search was going to allow them to search his computer for sexually related information. And so there's definitely an overlap in those two cases. But because it was fundamentally flawed in design, the court rejected it. In this case, what the officer did was use this boilerplate that paragraph after paragraph talks about what drug dealers do. This is definitely directed towards drug dealers. There's no question about it, and that's why it cites section 417, which is drug trafficking. And as a result of using this boilerplate, he gets a sweeping warrant to search practically everything in the house. So it would be the same warrant if it had the right section number for possession? If he used that boilerplate, Your Honor. He did not... And if he had limited the items to be searched. There's 11 lines of text describing the items to be searched, roughly 200 words. It's only the first six that have any bearing to this case, you know, all controlled substances and paraphernalia. Even going beyond marijuana is questionable. That is a very small portion of this warrant. They're allowing them to look through computers, through old papers, seize anything that looks like he didn't buy with his own hard-earned money. It's an absolutely comprehensive search of his house. And all that for someone who is caught smoking marijuana in his house. It's... The officer did the wrong thing. He shouldn't have used this boilerplate. This was a case where he says all he thinks is Mr. Church had smoked marijuana in his house, and he had one blunt, which is what someone smokes marijuana through. That's all the officer knew. That's all he told the magistrate. And he goes back. He doesn't tell the magistrate how long ago this happened. And he uses this form that gives him the right to do everything, which... Do you have some suggestion that the magistrate has a relationship, a rubber stamp relationship with the officers here? Is there any evidence to suggest that? There is no evidence, Your Honor. But essentially that is what... Do you agree with me that it's not a... That it does not qualify as a bare bones affidavit? Your Honor, I... My position is that under the third or fourth Leon exceptions, it qualifies. Now I've seen bare bones sometimes thrown in there with the third one. It's kind of a synonym. Now I understand there's a difference between... I think there's a difference between the two that I would not rely on. So I don't want to get confused there. Well, I think, well, it's generally been recognized that Leon is going to be disallowed or inappropriate for analysis in the event that a bare bones affidavit is submitted. It is generally interpreted as one that doesn't really have much, if anything at all, in the way of specific factual allegations, but is more conclusory and based upon information and belief. The flaws in this are not that it's conclusory. It's that it's misguided. I mean, if it's an assertion that they have proof that he's dealing drugs, racketeering, and money laundering, well, yes, then it is conclusory. The Detective Mosley didn't make any misrepresentations in the affidavit, did he? No, Your Honor. We have not... Well, not on this record. Isn't the problem here is the warrant is broader than should have been allowed, that the warrant should have been limited to search for possession, but it wasn't. The magistrate issued the warrant for drug trafficking and for that, so it was the magistrate's mistake in issuing the warrant. But once the magistrate makes the mistake, the search... I don't know. I don't think under the good faith exception, the officers that execute it are allowed to rely on that warrant, are they not? They are if the reasonable officer would rely on it, but as in Hodson and in Hythe and both... They have to have looked at the original affidavit to see if the magistrate issued a warrant that was more expansive than the magistrate should have? Is that the argument? They should have second-guessed the magistrate's decision? Your Honor, yes. I mean, they have to... The Leon analysis requires an officer to be comparing the probable cause to the warrant. Otherwise, that's what they look at. The Leon analysis looks at was the probable cause so defective the reasonable officer would not think the warrant was missing. Yes, the court does need to ask what would a reasonable officer think looking at this statement of probable cause compared to this warrant. And that they would recognize that there's not a date on it. I mean, I read it and I didn't notice that a date was missing at first. Your Honor, when you're in the middle of the case, knowing, having read that, well, the warrant, well, you know that and it's kind of like a blind spot and your eye can fill it in. But the reality is, under Hythe, you have to stick to the four corners of the affidavit. It is not stated in there when these past events happened. And that is enough to make it stale. I mean, wasn't... Correct me if I'm wrong here, but the omission of the date was actually a mistake, wasn't it? Yes, it was, Your Honor. So, counsel in the district court made the same mistake that now the officer unreasonably supposedly made? Your Honor, and that's entirely my fault. Oh, I don't mean to tag you. I regret that. I guess I'm saying I don't think you were so terribly unreasonable. So the staleness argument isn't preserved? Is that what we're saying? Your Honor, yes, there are arguments about that. So we have to review for plain error on that issue? No, you don't, Your Honor. It was raised in the sense of, well, there's an Eighth Circuit named Steve's that is right on point, a similar thing, where the defendant in the court, trial court, argued that probable cause for the search warrant was lacking. On appeal, he also argued that it was stale. And the Eighth Circuit said, well, the burden is on the government of proving it's not stale. And so this was implicitly involved in it. So it doesn't even need to be reviewed for plain error. The burden is on the government. I don't know why the burden would be on the government when the motion to suppress. Seems to me the burden is on the defendant, isn't it? Once you've moved to suppress, the burden is on the government. The government invaded his home. The burden is on them to prove the probable cause to get the search warrant. And it's well-established that that's their burden. And so it is implicitly there. And, you know, I mean, the issue was before the district court. The only proof on this issue is what's on the... The district court was never told this was a reason to suppress. I mean, it's not like, you know, you could have a defendant who claims ineffective assistance of trial counsel because of failure to make some objection, and the district court denies it, and then they come here and they argue, well, it was ineffective assistance because of failure to strike somebody during board year. I mean, that's just not the way appeals work. I mean, you have to make the argument to the district...tell the district court why it's doing something wrong. Yes, Your Honor. In this case, the government told the district court that it's not stale, and that was accepted. Now, even if the issue is reviewed for plain error, it actually does not make a lot of difference. The error is there. It's driven, dictated by binding precedent. It's clearly prejudicial. And then there's the court's discretion, whether or not to grant relief. I've argued that in the brief that the Sixth Circuit has done it before in a Fourth Amendment case. It would be considered ineffective on my part not to raise it at this point because you should...because you can't get plainly wrong. So in any event, yes, I did. Three minutes, Your Honor. You only have your three minutes. Thank you. May it please the court, Phil Webby, on behalf of the United States, as the appellee in this matter, this court should affirm the ruling of the district court denying the defendant's motion to suppress, as the search warrant issued by the judge was supported by probable cause and was lawfully issued and executed. I want to make note of one argument that Mr. Holley had just raised before he sat down. You also have a good faith defense, right? We do, Your Honor. Can we skip the first step and go directly to good faith if we want to? You can, but I would like to address... Yeah, you would rather have us rule that the warrant is valid. Ideally... You know, I think it's debatable. I think your stronger argument is on the good faith, that's all. Yes, sir. Ideally, the government would like the court to uphold the warrant on both ends in terms of the sufficiency of the warrant and alternatively under Leon. I understand... It does read like a distribution warrant. There are portions, Your Honor. The one thing I would point out to the court is that when you're in the middle of a criminal investigation, and I think the timeline showed that the incident occurred sometime around 11 a.m., the warrant was obtained shortly after 1 p.m. It was assigned by a criminal court judge in Davidson County, which is Nashville. So the detective in that particular case went to a criminal court judge, a trial judge in that particular county as opposed to a lower level judge that would handle general sessions, probable cause, preliminary hearings akin to the magistrate level. So I'd point that out to the court. But one of the things in terms of dealing with the good faith, Your Honor, in this particular case, the judge, when asked by the government at the hearing to make an alternative good faith finding, the court declined to do so because it did not need to do so. The defendant, having failed to raise the staleness argument below, deprived the court of the opportunity to explore any of that other information that could have potentially been brought to the court's attention. For example, had we been able to pursue, had the defendant raised the issue, had we been able to pursue with the detective whether when he went to obtain the Leon purposes could be considered, we were deprived of that opportunity because the defendant did not raise that argument before. The defendant mischaracterizes the government's argument when he suggests that the government said the warrant wasn't stale. The government was simply going over and stating its position at the end of the hearing, what the evidence showed. It was not indicating that the warrant was not stale. It was essentially talking about what had transpired and what was included within the warrant. So I think it's a little bit disingenuous in the mischaracterization to say that the government raised the issue of staleness. We were simply indicating as we were going through the search warrant process, arguing for its sufficiency, that it was timely and that these events had just transpired. So I take issue with that. But I would point out to the court that there is, on the flip side of that, so I want to say that the good faith argument, the government and the court were impacted negatively by the defendant's failure to raise that down below because we were not given the opportunity to pursue. I understand your argument on that point. Your Honor, regardless of that, I would submit that the search warrant on its face, the Four there is ample evidence in that affidavit that would cause someone, the judge reviewing it, to believe that that information, that those events had just transpired. Yeah, but I mean the search warrant is really for drug trafficking and the affidavit, the facts based upon personal knowledge are mere possession. I mean, so I have a problem with the over-breadthness of the warrant. I agree that a warrant could be issued to search the but it appears to be over-broad because it allows searches as if he is a drug trafficker. If you're authorized to search for elephants, you don't go around looking in desk drawers. This authorizes, turn it on its head, this authorizes in a very broad form the search for computer records, just as an example, machine guns as another example, and so forth. Judge Campbell didn't much like the boilerplate breadth of this warrant, and his comments seemed to indicate that he's seen this kind of thing before. That's correct, Your Honor. Right? I don't like don't do it again. And what should we be doing to perhaps put an exclamation, what should you be doing more to the point in the U.S. Attorney's Office to put an exclamation point on that issue? Well I would say, Your Honor, to the extent of the over-breadth, anything that was seized outside of what was supported in the warrant by probable cause, the remedy for that is the exclusion of that information. In this particular case, I would submit to the court that yes, Judge Campbell had expressed concern, and it was, the government conceded that there was no statute that was cited or the money laundering. However, there was probable cause to support for drug possession and drug trafficking, as found by Judge Campbell. Why drug trafficking too? Somebody smoking a blunt, and that's evidence of drug trafficking? I would submit to the court that, as Your Honors had pointed out earlier to Mr. Hawley, that this was an ongoing drug usage by this particular defendant. So there's reason to believe, based on the recency, that he had just been smoking that day, that there was a smell of smoke in the residence, based on his girlfriend's statements that he smokes in the house, essentially on a frequent basis. There would be reason to believe that information related to his acquisition of drugs could be found in the house. Obviously, if he's a routine user, he has a source of supply. So there arguably is evidence of drug trafficking that is found in the residence. Well, can you name one fact from this affidavit that suggests trafficking by him, as opposed to possession? That's not in common with just what a possessor would do. Well, I would submit to the court that... On that point, keeping in mind that being a commercial customer is, without more, not equivalent to determine a person is engaged in, for example, a conspiracy to distribute. Yes, Your Honor. Well, you don't even have to go there, because the statute... Can you name one such fact? That would suggest that he was a seller? Yeah, as opposed to, that would not be in common with somebody who's possessing, just for their own use. Well, the fact that he was receiving it, Your Honor, on a frequent basis and using it means he was a... That's in common with possessors. I mean, I guess what I'm hearing... I'm sorry. I mean, my sense is there are no such facts in this affidavit, and perhaps it would be helpful to hear arguments as to why you think that doesn't matter in this case. Well, it doesn't matter in this case, because the warrant encompasses the Tennessee Drug Control Act. The Tennessee Drug Control Act, 3917.418, encompasses possession and casual exchange of controlled substances. It also, as we pointed out in our brief, encompasses 3917.425, which is drug paraphernalia. So that there would be evidence. There were certainly, and the defendant concedes that there was probable cause that there would be drugs inside that residence. There was probable cause also that there would be items associated with drugs, and that would include drug paraphernalia, things to use to ingest controlled substances. So there's no question there. The fact that it wasn't as well-drafted or as precise, this was an investigation where a detective, within a span of two hours, is running out to get a warrant. Obviously not drafted by library scholars, I believe, as the cases would indicate. But in the haste of a criminal investigation, you have people who are detained on scene, they're going out to get the warrant, and coming back. It is to his credit he went and got the warrant. I mean, he could have just tried to do some exigency thing, right? Yes, sir. Yes, your honor. But after, armed with the information that he had, and he went and obtained the search warrant, there was clearly evidence, as conceded by the defense, that there were drugs in the residence. And the officer correctly got the warrant. Now, with the fact that the date was not in there, again, neither the judge below nor the parties below ever recognized that. Obviously, the judge who signed the warrant didn't recognize it. There were certainly, it's clear, because it's clear from the affidavit, the text of the affidavit itself, what had gone on, that these events had just occurred, that this man had just come home with his bag of Crystal's food. That's not something that would have happened months ago, or that his girlfriend came back to the house. These are events that, they're fair reading, and you can draw, the judge is entitled to draw reasonable inferences, not like in the Hodson case, but can draw reasonable inferences from the evidence. And that, the evidence that common sense tells you that these events just had transpired, they're set out in the affidavit. I guess, you know, timing is not your big challenge here, breadth is. I mean, really, this timing stuff, you can shoot at it all you want, but I think you put a couple clips in it already. Well, I think, Your Honor, that to the extent that the warrant authorizes, authorized the search for drugs and things associated with drugs, there's certainly nothing wrong with the warrant in that capacity. And the officers, and the evidence that's at issue in this case is evidence that was seized from a safe. And that is an area where, obviously, drugs are likely to be kept. So for what we are here about today, for purposes of this particular case, that the search did not exceed the lawful parameters of that warrant in terms of where you would expect to find safe with a drug. So submit to the court that the officer acted reasonably, yes, we acknowledge that it's a boilerplate warrant. Judge Campbell was not thrilled with it. But in terms of what we're here about today, the warrant was sufficient to support probable cause for that there would be evidence of drugs inside that residence. And where the officer searched was consistent with what the lawful scope of that warrant was. The officer certainly could operate it in good faith. This was far from any sort of bare bones affidavit. There were no misrepresentations in the warrant. This was clearly a lawful search. And I would submit that if the court had any issue with the warrant whatsoever, that Leon should operate in this case to save the safety. I think we understand your argument. Any further questions? I have none. Okay, Mr. Howell, you've got three minutes or both. I would like to say that tied in with the problem of the scope was the destruction of the safe. I think it's the fact that the officers feel they're executing this warrant in a drug trafficking case that they felt like, well, we should just break this open right now. If they had a clearly defined, narrowly cast warrant to search for drugs as in possession thereof and implements of utilization and perhaps records associated with the acquisition and things of that sort. In other words, a narrowly drawn possession of drugs case, they would be not authorized to go into a closed safe? Is that your argument? I think they could have still opened the safe. Okay. Thank you. I think that's all they needed to know. But they would not have been on the scene with the sense of, we are executing. What difference does it make what sense was in their minds? The question is whether they were reasonably authorized to do so. Yes, sir. I'm reasonably authorized to. They were not authorized to destroy it. Under these circumstances, they've got, oh, hello, is your name David Church? We've got an arrest warrant. No, it's not. Lie at the threshold, right? And then later on, oh, well, I guess, yeah, that is my name. And do I have the first name right? Yes, I do. So, and then in the house, I'll show you the marijuana and so forth. The search warrant comes up and then they go upstairs, they approach the bedroom. Here's a safe. Oh, how do we open this safe? Ah, we have a key here. This is on your key ring, Mr. Church, right? Yeah.  Yep. Put it in, turn it. Well, we need a combination. And what's his response? Well, I don't have that combination. It came with the house. I don't know. So, under those circumstances, it's not legitimate for them to say, okay, listen, we're going into the safe. They could have eventually, they could have gone in the safe without destroying it. He had a chance. He could have told them the combination. He could have, although it was not incumbent upon him to have to speak. He had the right to remain silent. I mean, even if one assumes that they acted out of line in cracking open the safe, I mean, really is the remedy that we suppress the evidence in this case because we busted a $50 safe or whatever it was? Your Honor, I would think that it's an invasion of his property, it's a destruction of his property. After he lied to them about not having money for his property damage, but do we suppress the evidence? Your Honor, there have been cases litigated on this issue and people have lost. I assume the courts reached the issue because there would have been a remedy, but that question has not been addressed. I think you'd, I would suggest that you find that there are some awfully aggravated circumstances in the execution, in those other instances where execution was found to be out of bounds. I strike probably far more egregious than the minimal level of egregiousness here. There have been civil cases and criminal cases both. I see you have no other time. I did want to say that I did want to cite to the court a case called Cassidy v. Gehring. It's a fairly recent Tenth Circuit case on severability. It's 567F3-628, 567F3-628. Anyway, it's a good analysis of the limits of, well, the problem where a search warrant is very, very broad, with only a small part that's valid. Okay, that's helpful. We will take a look at it. Thank you very much, Mr. Hawley. Good arguments. The case will be submitted.